# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| THI OF KANSAS AT HIGHLAND PARK, LLC d/b/a/ TOPEKA COMMUNITY HEALTHCARE CENTER, <br><br> Plaintiff, <br><br> v. <br><br> KATHLEEN SEBELIUS, in her official capacity as Secretary, United States Department of Health and Human Services, et al., <br><br> Defendants. | Case No. 13-2360-JAR-JPO |

## MEMORANDUM AND ORDER

Plaintiff THI of Kansas at Highland Park, LLC, which operates Topeka Community Healthcare Center ("THI"), seeks injunctive relief to prevent Defendant Kathleen Sebelius, in her capacity as Secretary of the United States Department of Health and Human Services (the "Secretary"), and Defendant Shawn Sullivan, in his official capacity as Secretary for the Kansas Department for Aging and Disability Services ("KDADS Secretary"), from terminating THI's Medicare and Medicaid certification on August 12, 2013, before an administrative hearing on the merits of that termination. Plaintiff also seeks to enjoin Defendants from appearing at the Topeka Community Healthcare Center facility for the purpose of meeting with the residents and their families to discuss the termination and to enjoin HHS, the Centers for Medicare and Medicaid Services ("CMS") and the Kansas Department for Aging and Disability Services ("KDADS") from publishing any notice about the termination to any governmental body, private

entity or the general public.  Additionally, Plaintiff seeks to enjoin Defendants Amerigroup Corporation, d/b/a Amerigroup Kansas, Centene Corporation d/b/a Sunflower State Health, and United Healthcare of the Midwest, Inc. from discussing with the residents and/or the residents' family the need for the residents to move or relocate as a result of CMS and KDADS' termination of THI's Medicare and Medicaid certification and provider contracts.

Before the Court is Plaintiff THI of Kansas at Highland Park, LLC's Motion for Temporary Restraining Order (Doc. 4) and Motion for Expedited Hearing (Doc. 6), filed on July 19, 2013.  As described more fully below, the Court denies Plaintiff's Motion for Temporary Restraining Order ("TRO"), but grants its request for an expedited hearing on the motion for preliminary injunction.

## I.    Background

The following facts are alleged in the Verified Complaint.

Plaintiff THI is the operator of a skilled nursing facility known as Topeka Community Healthcare Center located in Topeka, Kansas; it is licensed by KDADS.  THI has 82 beds and primarily serves elderly individuals who need skilled nursing services.  THI maintains a secured unit of 22 beds to serve individuals with Alzheimer's disease and related dementia.

THI is certified by CMS as a provider under the Medicare Program.  THI has entered into an agreement with CMS to provide skilled nursing services to Medicare Beneficiaries in return for payment for those services under the federal Medicare program.  THI is likewise certified to participate in the Kansas Medicaid Program.  The Medicaid Program is administered by KDADS.

THI's participation in the Medicare and Medicaid Programs is governed by a complex statutory and regulatory regime.   In order to qualify to receive payments under these programs,

THI must be certified and in "substantial compliance" with the participation requirements for the programs under federal law.[1] The Secretary of the Department of Health and Human Services ("HHS") is responsible for conducting periodic onsite inspections, termed "surveys," of facilities to determine whether they are in substantial compliance.[2] CMS is a division of HHS, and conducts the surveys. HHS also contracts with survey agencies, to conduct Medicare and Medicaid surveys on behalf of HHS, including state agency personnel acting as agents of CMS. In Kansas, KDADS is the authorized state agency that surveys skilled nursing facilities on behalf of Medicare and Medicaid.

Where the Secretary determines that a facility's deficiencies pose "immediate jeopardy" to residents' health and safety, applicable law authorizes the Secretary to either appoint temporary management over the facility or terminate the facility's Medicare and Medicaid provider agreement.[3] Where a nursing facility's participation in Medicare and Medicaid will be terminated, federal law entitles the facility to an appeal process that includes a hearing before an Administrative Law Judge ("ALJ"); review of the ALJ decision by the HHS Departmental Appeals Board ("DAB"); and judicial review of the DAB's decision.[4]

On May 13, 2013, and again on June 13, 2013, KDADS conducted complaint surveys at THI. Both surveys identified deficiencies, including one that qualified as immediate jeopardy. On June 21, 2013, CMS sent correspondence to THI stating that KDADS' June 20, 2013 survey found that THI was not in compliance with Federal participation requirements for nursing homes

---

[1] *See* 42 U.S.C. § 1395i-3, 42 U.S.C. § 1396r; 42 C.F.R. §§ 483.1–483.61; *see also* 42 C.F.R. § 488.301.

[2] 42 U.S.C § 13965i-3(h)(2).

[3] 42 U.S.C. § 1395i-3(h)(2)(A)(i).

[4] 42 U.S.C. § 1320a-7a(c)(2); 42 C.F.R. §§ 408(g), 498.3(b)(12)–(13).

3

participating in Medicare and/or Medicaid programs, and that consequently, "payment for new Medicare and Medicaid admission will be denied July 13, 2013," and THI would also receive imposition of a civil money penalty.

On July 2, 2013, THI was again informed by CMS that THI did not meet the requirements for participation as a skilled nursing facility under the Medicare program, and that a denial of new Medicare and Medicaid admissions would be effectuated July 13, 2013 and that THI's Medicare agreement would be terminated August 12, 2013. That same day, THI was likewise informed by KDADS that because of CMS' findings, THI's Medicaid agreement would also be terminated on August 12, 2013.

On July 5, 2013, KDADS served THI with a Notice of Intent to Revoke Adult Home Care License. This Notice provided that KDADS was terminating THI's license for failure to comply with the requirements for participation in the Medicare and Medicaid Programs and due to CMS's revocation of THI's Medicare participation agreement.

On July 8, 2013, THI appealed the deficiencies identified in the May 3, 2013 and the June 20, 2013 surveys. On July 9, 2013, THI requested that CMS consider alternative plans for facility performance improvement and continued operations and/or the opportunity for THI to demonstrate the correction action implemented since the most recent survey, however, the request was denied in a letter from CMS that same day, and THI was again notified that termination of the Medicare provider agreement would proceed as scheduled. Additional time to address the deficiencies identified in the June 20, 2013 survey and the request was denied in a letter from CMS that same day.

On July 10, 2013, THI filed a request with the DAB to expedite its appeal.

On July 16, 2013, THI appealed KDADS' Notice of Intent to Revoke Adult Care License, and THI also appealed the termination of its Medicaid provider agreement and requested an expedited review.

As recently as July 17, 2013, Defendants have contacted the residents and their families instructing them that they are required to move or relocate as a result of CMS and KDADS' termination of THI's Medicare and Medicaid certification and provider contracts.

## II. Legal Standard

A TRO preserves the status quo and prevents immediate and irreparable harm until the court has an opportunity to pass upon the merits of a demand for preliminary injunction.[5] Where the parties have notice of and an opportunity to respond to a motion for TRO, the specific requirements of Rule 65(b) do not apply, including the fourteen-day limitation on the duration of the order.[6] Under these circumstances, the Court follows the same procedure as for a preliminary injunction.[7]

"As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."[8] The moving party must establish the following elements to obtain relief: (1) a substantial likelihood of success on the merits; (2) a showing of irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage

---

[5] *Flying Cross Check, L.L.C. v. Cent. Hockey League, Inc.,* 153 F. Supp. 2d 1253, 1258 (D. Kan. 2001).

[6] *See* Fed. R. Civ. P. 65(b); *Kan. Hosp. Ass'n v. Whiteman*, 835 F. Supp. 1548, 1551 (D. Kan. 1993). Defendants have been provided notice of the Motion for Temporary Restraining Order and Preliminary Injunction. Doc. 9.

[7] *Whiteman*, 835 F. Supp. at 1551.

[8] *Schrier v. Univ. of Col.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quoting *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991)).

the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest.[9] In cases where the movant has prevailed on the other factors, the Tenth Circuit uses a liberal standard for "probability of success on the merits," so the moving party need only raise "questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation."[10]

### III. Discussion

Plaintiff maintains that its motion does not seek a determination on the merits of the state and federal agencies' decision to terminate its Medicare and Medicaid certifications. Instead, it seeks injunctive relief to preserve the status quo until its appeal can be heard through administrative channels. Yet, the Complaint seeks declaratory relief—a declaration that the deficiencies identified by CMS did not place THI residents in immediate jeopardy, that the deficiencies were remedied by THI, and that Defendants were not entitled to terminate THI from participating in the Medicare and Medicaid programs.

The Court first considers whether there is evidence of irreparable harm sufficient to issue a TRO prior to an evidentiary hearing on the motion for preliminary injunction. At this stage, the Court has before it only the Verified Complaint, executed by Bryan Roby, the Administrator of THI;[11] a Declaration by Roby;[12] a Declaration by Tom Fisher, whose sister-in-law is a resident

---

[9]*Id.*

[10]*Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980) (internal quotations omitted).

[11]Doc. 1.

[12]Doc. 1, Ex. A.

at THI;[13] and a draft "Transfer Trauma review" memo written by David L. Jackson, MD, PhD.[14] On this record, the Court cannot find irreparable harm.

Purely speculative harm does not amount to irreparable harm.[15] The "irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages."[16] Plaintiff understandably focuses on the harm to resident patients at its facility if the injunction does not issue. But this is not a harm to Plaintiff—the THI patients "do not have standing to challenge the Secretary's decertification of their facility . . . [so it] cannot rely solely on the irreparable harm to its patients in this analysis."[17] That leaves THI's economic argument that it will not be able to continue to operate if the decertification goes through on August 13, 2013. While the Court considers this risk of harm to THI, it does not have before it at this time any evidence about the likelihood of it receiving an expedited hearing by the August 13, 2013 date, or how long it will take after decertification before THI would cease to operate.

Moreover, the Court must go beyond identifying the harm to THI if an injunction does not issue, it must also identify the potential damage to the adverse parties in this matter. In this context, the statutory and regulatory scheme at issue is designed to protect "the safety and care of elderly and disabled Medicare patients" and to minimize "the expenses of administering the

---

[13]Doc. 1, Ex. B.

[14]Doc. 1, Ex. C.

[15]*Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1259 (10th Cir. 2003).

[16]*Id.* (quotation omitted).

[17]*Cathedral Rock of N. Coll. Hill, Inc. v. Shalala*, 223 F.3d 354, 364 (6th Cir. 2000); *see also O'Bannon v. Town Ct. Nursing Ctr.*, 447 U.S. 773, 787–90 (1980); *Bristol Health Care Investors, LLC v. Emkes*, No. 2:13-CV-137, 2013 WL 2403299, at *10 (E.D. Tenn. May 31, 2013).

Medicare program."[18] The Court cannot find on this record that the risk of harm due to a hearing delay outweighs the government's interest in protecting Medicare and Medicaid patients, and in expeditious procedure.[19]

The Court at this time denies injunctive relief. However, Plaintiff's motion is converted into a motion for preliminary injunction and the motion to expedite a hearing on that motion is granted. The hearing is set for Thursday, July 25, 2013, well in advance of the August 13, 2013 decertification date. While Plaintiff cannot establish on the present record irreparable injury that outweighs the potential damage to Defendants if an injunction issues between now and the Court's decision on the motion for preliminary injunction, the Court will reconsider these arguments after an evidentiary hearing and an opportunity for Defendants to respond. The parties are advised that no factual findings or legal conclusions in this Memorandum and Order shall be binding on the Court's consideration of the motion for preliminary injunction. The parties should be prepared to discuss all aspects of Plaintiff's request for preliminary injunction at the hearing on Thursday, July 25, 2013. In particular, the parties should be prepared to discuss the issue of subject matter jurisdiction, the scope of Plaintiff's claims in this case, and authority that discusses whether Plaintiff has a right to a pre-termination hearing in this context.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Temporary Restraining Order (Doc. 4) is denied.

---

[18] *Cathedral Rock*, 223 F.3d at 365; *Bristol Health Care Investors, LLC.,* 2013 WL 2403299, at *10 (quoting *Northlake Comm'y Hosp. v. United States*, 654 F.2d 1234, 1241–43 (7th Cir. 1981); *GOS Operator, LLC v. Sebelius*, 843 F. Supp. 2d 1218, 1240 (S.D. Ala. 2012).

[19] *See Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (explaining that the statutory and regulatory scheme sometimes causes individual, delay-related hardship but that "[i]n the context of a massive, complex health and safety program such as Medicare, embodied in hundreds of pages of statutes and thousands of pages of often interrelated regulations, any of which may become the subject of a legal challenge in any of several different courts, paying this price may seem justified.").

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Expedited Hearing (Doc. 6) is granted. A preliminary injunction hearing is set for July 25, 2013, at 10:00 a.m. in Courtroom 401.

Dated: July 23, 2013

                                          S/ Julie A. Robinson

                                          JULIE A. ROBINSON

                                          UNITED STATES DISTRICT JUDGE